## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JIM PALMER EQUIPMENT, INC.**,

Case No.  **08-60892-11**

Debtor.

## *MEMORANDUM of DECISION*

At Butte in said District this 25th day of November, 2008.

Debtor's Motion for Modification of Lease filed August 27, 2008, and Navistar Leasing Company ("Navistar")'s Motion to Modify Stay filed on October 6, 2008, are pending in this Chapter 11 bankruptcy case.  At a hearing held November 18, 2008, in Billings, the parties agreed through their respective counsel that resolution of the Motion to Modify Stay necessarily depended on the Court's ruling on Debtor's Motion for Modification of Lease.

On October 9, 2008, Debtor and Navistar filed a Stipulation wherein the parties agreed to submit Debtor's Motion for Modification of Lease to the Court on the following agreed facts:

(i) As of the commencement of this case the DIP was a party to three leases with Navistar Leasing Company for 22 2003 Utility trailers.

(a) Lease No. 12 dated June 3, 2002, . . . for 10 2003 Utility trailers;

(b) Lease No. 13 dated June 10, 2002, . . . for 10 2003 Utility trailers;

(c) Lease No. 14 dated June 10, 2002, . . . for 5 2003 Utility trailers.

(ii) Three of the trailers in Lease No. 13 have been wrecked and [are] no longer possessed

1

by the DIP.

(iii) Each of the leases expired on June 10, 2008.

(iv) Pursuant to the terms of the leases, the DIP on February 28, 2008, gave notice of the

exercise of its right to purchase the trailers for the sum of $145,879.65 for Lease No. 13 and

$81,044.25 for Lease No. 14.

(v) The DIP has provided the required notice to exercise its right to purchase.

The Court would note that provisions (iv) and (v) of the agreed facts set forth above are

inconsistent as no evidence exists in the record that Debtor gave any notice to exercise any right

to purchase trailers for Lease No. 12.  However, consistent with provision (iv), the various

documents submitted by the parties include two "Lessee's Election as to Disposition of

Equipment at End of Lease Term" dated February 25, 2008, pertaining to Lease No. 13

(regarding 7 trailers) and Lease No. 14 (regarding 5 trailers).  Given the absence of any Lessee's

Election as to Disposition of Equipment at End of Lease Term with respect to Lease No. 12, the

Court concludes that Debtor did not provide Navistar with timely notice of its desire to exercise

its right to purchase the 10 trailers that are the subject of Lease No. 12.

In addition to the agreed facts, the record shows that Debtor sought voluntary protection

under Chapter 11 of the Bankruptcy Code on July 10, 2008.  Debtor filed a proposed Chapter 11

Plan on November 17, 2008.  Debtor's proposed Chapter 11 Plan provides for Navistar as

follows:

> 7.02-F.   The monthly lease payment paid to Navistar Leasing Company
> will be set in the amount of $8,445.22 for a period of 39 months commencing 30
> days after the confirmation date.  The difference between the remaining
> cumulative monthly lease payments due as of the commencement of this case and
> the sum of all payments made prior to the confirmation date will be allowed as a

priority administrative claim as a Class XII claim[1] and difference between the cumulative monthly payments due under the terms of the pre-bankruptcy contract and the total paid under the terms of this plan will be allowed as a general unsecured claim as a Class X or XI claim.[2]  Navistar Leasing Company shall file an application for an administrative claim and a proof of claim for its general unsecured claim within 60 days after the date of the confirmation order.

The first page of Debtor's Motion for Modification of Lease states that Debtor is seeking to modify the terms of the 3 leases between Navistar and Debtor under 11 U.S.C. § 365(d)(5) by extending the time in which Debtor may exercise its residual buy-out right to November 12, 2008.  Debtor also requests a finding by this Court that Debtor is excused from further financial performance under the three leases as might be required by 11 U.S.C. § 365.  Inconsistent with Debtor's Motion, Debtor's Brief filed October 30, 2008, asks that Debtor be granted "a reasonable period of time of up to plan confirmation to assume or reject the underlying options to purchase."[3]

Navistar opposes Debtor's Motion arguing that the leases expired by their own terms prepetition, that Debtor's residual buy-out right expired at the time the leases expired, and

_____

[1]  Per Debtor's proposed Chapter 11 Plan, Class XII claims are those allowed claims of an administrative expense of personal property lessors for preservation of the estate pursuant to 121 U.S.C. § 503.  Said claims are impaired and will be paid through 48 monthly payments commencing 180 days from confirmation.

[2]  Per Debtor's proposed Chapter 11 Plan, Class X creditors hold general unsecured claims of less than $1,000.00 while Class XI creditors hold general unsecured claims of $1,000.00 or more.  Both classes of creditors are considered impaired.  The Class X allowed claims will be paid in full 180 days from the date of the order of confirmation.  Class XI allowed claims will be paid 34% of their allowed claims through 48 monthly payments commencing 180 days after the date of the order of confirmation.  Any Class XI claimant may elect for treatment as a Class X claimant and will be allowed a claim of $1,000.00.

[3]  A hearing on approval of Debtor's Disclosure Statement is scheduled for January 15, 2009.  Thus, it is fair to assume that any hearing on confirmation of Debtor's Chapter 11 Plan would not occur prior to the Court's Missoula hearing date of February 12, 2009.

therefore, Debtor cannot resurrect the residual buy-out option in this Chapter 11 bankruptcy.

Counsel for Debtor concedes in Debtor's Brief filed October 30, 2008, that the leases at issue are not disguised installment transactions but rather, are legitimate leases.  Accordingly, Debtor maintains that "the requirements and limitations of 11 U.S.C. [§] 365 control how each lease is to be treated in this bankruptcy case."  In addition, Debtor's counsel asserts in the Motion that Debtor has the right to purchase the 22 trailers for $328,534.00 and later asserts in the Objection to Motion to Modify Stay filed October 16, 2008, that Navistar is owed $328,534.00. Debtor has consistently maintained that the trailers have a current value of $418,000.00. Navistar asserts in its Motion to Modify Stay filed October 6, 2008, that it is owed $18,011.00 in unpaid prepetition rent and that the trailers at issue have a fair market value of $422,283.03.

Lease Nos. 12, 13 and 14 contain identical language with respect to terms.  For example, each lease is for 72 months and provides for monthly rent of $594.93 per trailer.  Each lease also contains the following holdover rent clause:

> In the event the Lessee fails to return the Equipment to Lessor upon the expiration of earlier termination of the Lease Term (All in accordance with Paragraph 12 below) in addition to all other remedies available to Lessor as a result thereof, Lessee shall pay to Lessor upon demand Rent for each day such breach continues in an amount equal to 110% of one-thirtieth (1/30th) of the full Monthly Rent applicable during the Lease Term.  Lessor's acceptance of such Rent shall not relieve Lessee of any of its obligations under this Lease or constitute the consent of Lessor to permit Lessee to continue to delay returning the Equipment to Lessor in accordance with Paragraph 12.

Each Lease also contains a fair market value purchase option that reads:

> So long as the Lease Term has not been terminated prior thereto, and provided Lessee is not in default under his Lease, Lessee may elect to purchase (the "Purchase Option") all (but not less than all) of the items of Equipment at the end of the Lease Term (as it may be extended by written agreement of Lessor and Lessee) by giving Lessor written notice of such election at least ninety (90) days

prior to the then scheduled end of the Lease Term.  If for any reason whatsoever Lessee does not give Lessor such a notice at least ninety (90) days prior to the then scheduled end of the Lease Term, then Lessee's right to purchase the Equipment will automatically expire (unless Lessor waives, in writing, the delay).

If Lessee properly exercises the Purchase Option, Lessee will purchase the Equipment immediately upon the termination of the Lease Term on an AS IS basis in its then location for cash for a purchase price equal to its then Fair Market Value, plus all applicable sales and other taxes due with respect to the sale.  "Fair Market Value" shall mean the price which Lessor determines in good faith would be obtained in an arms-length transaction between a willing buyer-user and a willing seller (excluding for these purposes, lessees in possession of equipment, used equipment dealers and other discount purchasers), neither under any compulsion to sell or to buy; provided, however, in making a determination of Fair Market Value for these purposes (1) the Equipment shall be deemed to be in at least as good condition as it is required to be maintained under this Lease, and (2) costs of removal from the then location of Equipment shall not be deducted from the Fair Market Value as otherwise determined.

After carefully reviewing the pleadings filed by Debtor, it appears that Debtor wants additional time to either accept or reject its leases with Navistar and wants additional time to decide whether it should exercise its buy-out right.  As far as the Court can determine, Debtor then seeks to either continue leasing the vehicles at a substantially reduced rate,[4] or exercise its buy-out right by purchasing the trailers over a period of 39 months at Debtor's suggested price of $328,334.00 (which amount is well below Debtor's $418,000 estimate of fair market value or Navistar's claimed fair market value of $422,283.03) plus $829.58 in interest.

---

[4] Paragraph 7.20-F makes reference to monthly lease payments and cumulative month lease payments.  Thus, it appears that Debtor intends to reduce the monthly rent on the 22 trailers from $13,088.46 as set forth in the leases, or $14,397.31 under the holdover rent clause of the leases, to $8,445.22 per month.  Over a period of 39 months, Debtor would thereby reduce the total payments to Navistar, assuming for discussion purposes only that the total rent per month is $13,088.46 as set forth in the lease agreements before their termination, by the sum of $181,086.36 ($13,088.46 less $8,445.22 multiplied by 39 months) and pay Navistar either $1,000.00 for said amount as a Class X claimant or pay Navistar $61,569.37 as a Class XI claimant.

Debtor relies on the cases of *Zions Credit Corp. v. Rebel Rents, Inc. (In re Rebel Rents, Inc.)*, 291 B.R. 520, 530 (Bankr. C.D.Ca. 2003), *Willamette Waterfront, Ltd. v. Victoria Station, Inc. (In re Victoria Station, Inc.)*, 875 F.2d 1380 (9th Cir. 1989), *In re Musikahn Corp.*, 57 B.R. 938 (Bankr. E.D.NY. 1986), and *Legacy Ltd. v. Channel Home Centers, Inc. (In re Channel Home Centers, Inc.)*, 989 F.2d 682 (3rd Cir. 1993), cert. denied, 510 U.S. 865, 114 S.Ct. 184, 126 L.Ed.2d. 143 (1993), to support the argument that Debtor should be permitted to modify its leases with Navistar.  The Court finds that Debtor's reliance on the aforementioned cases is misplaced.

For example, Debtor cites the case of *Rebel Rents* for the proposition that "a debtor should have a reasonable time to decide whether or not to accept or reject an unexpired lease." In *Rebel Rents*, the lessor was seeking relief from the automatic stay or in the alternative, for an order requiring the debtor to immediately assume or reject unexpired leases of personal property. The leases in that case expired in November of 2003, yet the debtor filed for bankruptcy protection on September 23, 2002, well before the November 2003 expiration date of the leases. *Rebel Rents*, 291 B.R. at 523.  With respect to the unexpired leases, the court in *Rebel Rents* granted the lessor's request that the debtor be required to assume or reject the leases within a reasonable time:

> In a case under chapter 11, a debtor in possession may assume an unexpired lease of personal property at any time prior to confirmation of a plan. 11 U.S.C. § 365(a) & (d)(2).  It is the policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of the petition, continuing until the confirmation of a plan, in which to assume or reject an unexpired lease. *See In re Enron Corp.*, 279 B.R. 695, 702 (Bankr.S.D.N.Y.2002).  However, the court, on request of a party to a lease, may order the debtor in possession to determine within a specified period of time whether to assume or reject. 11 U.S.C. § 362(d)(2).

* * *

What constitutes a "reasonable time" to assume or reject an unexpired personal property lease is within the discretion of the bankruptcy court based on the facts and circumstances of the case. *See Theatre Holding Corp.*, 681 F.2d at 105, citing *In re Flying W. Airways*, 328 F.Supp. 1256, 1258 (E.D.Pa.1971); *Enron Corp.*, 279 B.R. at 702; *In re Teligent*, 268 B.R. 723, 736 (Bankr.S.D.N.Y.2001).

* * *

Debtor has had more than enough time to formulate a plan. Debtor cannot continue to maintain its freedom to assume or reject its leases with Zions without paying for its use of the vehicles. As noted by the bankruptcy court in *Theatre Holding Corp.*, "this state of affairs allow[s] the debtor to 'have its cake and eat it too.' " *Theatre Holding Corp.*, 681 F.2d at 105. Therefore, Debtor shall, not later than 30 days from the date of entry of this memorandum opinion, file a motion to assume or reject the Master Lease and Leases # 1 and # 2 with Zions pursuant to 11 U.S.C. § 365(d)(2) and Fed.R.Bankr.P. 6006(a).

*Rebel Rents*, 291 B.R. at 531. Debtor then proceeds to cite to *Victoria Station*, *Channel Homes Centers* and *Musikahn* arguing that even though said cases deal with nonresidential real property and former 11 U.S.C. § 365(d)(4), "it is clear that the law of the cases should be the same." Debtor's reliance on *Victoria Station*, *Channel Homes Centers* and *Musikahn* is misplaced and dangerous because § 365(d)(4) was extensively amended by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA") to create a finite time in which a trustee or debtor may assume or reject a real property lease and to give greater rights to real property lessors.[5]

---

[5] Section 365(d)(4) was amended in 2005 to read:

(4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of–

(i) the date that is 120 days after the date of the order for relief; or

While Debtor has moved to modify its leases with Navistar, it clearly has not moved to assume or reject such leases. If the Court were to apply § 365(d)(4) to Debtor's personal property leases, which it is not inclined to do, Debtor's leases would have been statutorily rejected on or about November 10, 2008.

While the foregoing is perhaps an interesting academic discussion, the bottom line is that Lease Nos. 12, 13 and 14 expired by their own terms one month prior to Debtor's bankruptcy petition date. Debtor's own case of *Musikahn,* 57 B.R. at 939, states unequivocally that "[a] commercial lease that has been terminated by the expiration of its stated term is not included as property of the debtor's estate. 11 U.S.C. § 541(b)(2). Similarly, a landlord's acts to obtain possession of property under such a terminated lease are not enjoined by the automatic stay. 11 U.S.C. § 362(b)(10)." The Court further notes that *Musikahn* clearly involves commercial nonresidential leases , which are discussed in 11 U.S.C. §§ 362(b)(10) and 541(b)(2), and which are clearly distinguishable from the personal property lease involved in the case *sub judice.*

The *Musikahn* court's statement regarding termination of leases prepetition is consistent with prior rulings of this Court involving real property. In *Welborn v. Ruegsegger (In re Welborn)*, 4 Mont. B.R. 429, 431-32, 75 B.R. 243 (Bankr. D.Mont. 1987) (citing *Moody v.*

---

(ii) the date of the entry of an order confirming a plan.

(B)  (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

(ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

*Amoco Oil Co.*, 734 F.2d 1200, 1204 (7th Cir. 1984)), this Court previously held:

> "When a contract has been validly terminated pre-bankruptcy, the debtor's
> rights to continued performance under the contract have expired.  The
> filing of a petition under Chapter 11 cannot resuscitate those rights.  *See In
> re Triangle Laboratories, Inc.*, 663 F.2d [463] at 467-68 [3rd Cir. 1981] *
> * *".

* * *

> "Similarly, Section 541(a) provides that a debtor's estate consists of 'all
> legal or equitable interests of the debtor in property as of the
> commencement of a case.' Thus, whatever rights a debtor has in property
> at the commencement of the case continue in bankruptcy-no more, no less.
> Section 541 'is not intended to expand the debtor's rights against others
> more than they exist at the commencement of the case.' H.R.Rep. No. 595,
> 95th Cong., 1st Sess., reprinted in 1978 U.S.Code Cong. & Ad.News
> 5787.

* * *

> Further, since the lease expires by its own terms on March 15, 1987, pre-petition,
> and such termination was complete on that date, neither Sections 365 (assumption
> of unexpired lease) nor Section 108(b) (right to cure default in existing contract )
> are applicable. Moody, at 1212 and 1215. *See also, In re Liddle*, 75 B.R. 41, 4
> Mont. B.R. 253 (Bankr.D.Mont.1987); *In re Santa Fe Development Inc.*, 16 B.R.
> 165 (9th Cir. BAP 1981).

Unlike Debtor's argument, Navistar's argument on this issue is on point and persuasive.

Section 365 of the Bankruptcy Code applies by its express terms only to unexpired leases, i.e. to

leases which are unexpired as of the date of the filing of the Debtor's petition.  Debtor concedes

that its leases with Navistar expired prior to the Debtor's bankruptcy petition date of July 10,

2008.  Therefore, the Leases are not governed by § 365, and may not be assumed or modified

postpetition and are not subject to § 365(d)(5), which applies only to personal property leases that

are unexpired as of the date of the bankruptcy filing. *See generally In re Lakeshore Const. Co. of*

*Wolfsboro, Inc.*, 390 B.R. 751 (Bankr. D.N.H. 2008) ("The provisions in § 365(d)(5) were added

9

to the Bankruptcy Code in 1994 to make it easier for lessors of personal property to recover

postpetition lease payments prior to acceptance or rejection of a lease by the trustee or

debtor-in-possession.")[6]

The law could not be clearer that a contract or lease which expires by its own terms

prepetition, without right of reinstatement by the Debtor, eliminates the possibility of assumption

or assignment in the Debtor's bankruptcy case. *In re Texscan Corp.*, 107 B.R. 227 (B.A.P. 9th

Cir. 1989) ("It is axiomatic that before 11 U.S.C. § 365 can apply a contract must exist. If a

contract has expired by its own terms then there is nothing left to assume or reject. 2 COLLIER ON

BANKRUPTCY 365.02 at 365-14 (15th ed. 1981)."), *aff'd*, 976 F.2d 1269 (9th Cir. 1992); *In re*

*Pyramid Operating Authority, Inc.*, 144 B.R. 795, 808 (Bankr. W.D.Tenn. 1992) ("It is well

established that an agreement or contract which is validly terminated prepetition under applicable

state law is not assumable under section 365(a)."); *In re Southold Development Corp.*, 134 B.R.

705 (E.D. N.Y. 1991) ("Contracts terminated prior to the filing of a bankruptcy petition are not

property of the debtor's estate, and the court cannot resuscitate previously extinguished contract

rights."); *Atlantic Richfield Co. v. Herbert (In re Herbert)*, 806 F.2d 889, 892-93 (9th Cir. 1986).

The terms of the leases do not provide for reinstatement and the parties stipulate that the leases

expired by their own terms prepetition.

A lease which is matured and expired prepetition is not property of a debtor's bankruptcy

estate, and, therefore, a bankruptcy court is without power to modify that lease.  A contract or

---

[6] The provision requiring a trustee to timely perform all of the obligations of the debtor under an unexpired lease of personal property was added to the Bankruptcy Code in 1994 as § 365(d)(10). *In re Midway Airlines Corporation*, 406 F.3d 229, 234 (4th Cir.2005). BAPCPA amended § 365 by renumbering former § 365(d)(10) as § 365(d)(5). However, BAPCPA did not alter or amend the language of former § 365(d)(10).

lease terminated prepetition cannot be property of the estate, nor can the right to assume the

terminated contract be viewed as property of the estate, and § 365 should not be permitted to

resurrect a terminated contract. *Moody v. Amoco Oil Company*, 734 F.2d 1200 (7th Cir. 1994) (if

contract terminated prepetition, there is nothing left to assume).  Since no power exists to

reinstate the agreement, the lease may not be assumed, even if assumption is absolutely essential

to the continuation of the debtor's business.

The only conceivable argument that Debtor could have in this case is that Debtor had

some right on its petition date to complete its exercise of its buy-out rights.  As previously noted,

Debtor did not timely exercise its buy-out rights of Lease No. 12 by providing Navistar with

notice of Debtor's intent to exercise such right 90 days before expiration of the Lease Agreement.

Thus, following expiration of the Lease Agreement No. 12 in June of 2008, no unexpired lease

existed for Debtor to assume or reject and Debtor cannot somehow revive its buy-out rights.

As for Debtor's election to buy the trailers under Lease Nos. 13 and 14, the purchase

option specifically provides that "Lessee will purchase the Equipment immediately upon the

termination of the Lease Term[.]" Webster's Dictionary defines "immediately" as "without

interval of time: without delay[.]" Debtor's failure to tender the fair market value of the trailers to

Navistar on or about June 10, 2008, terminated Debtor's purchase option.  Consistent with the

earlier discussion, once the purchase option was terminated, Debtor cannot now revive such

option in this bankruptcy proceeding by proposing the tender payment, which may not even

represent fair market value, over a period of 39 months commencing 30 days after confirmation.

Therefore, the Court concludes that Debtor's Motion for Modification of Lease filed August 27,

2008, must be denied.

At the November 18, 2008, hearing, Debtor's counsel agreed that Debtor's right to the trailers and Debtor's right to extend possession of the trailers will necessarily determine the outcome of Navistar's stay motion, conceding that if the Court denied Debtor's Motion for Modification of Lease, it would be appropriate for the Court to grant Navistar's Motion to Modify Stay.  Accordingly, consistent with this Memorandum of Decision, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtor's Motion for Modification of Lease filed August 27, 2008, is DENIED; Navistar Leasing Company's Motion to Modify Stay filed October 6, 2008, is GRANTED; Navistar Leasing Company is permitted to take immediate possession of, marshal, sell and liquidate the 22 trailers that are the subject of expired Lease Agreement Nos. 12, 13 and 14 between Debtor and Navistar Leasing Company; and absence an agreement between Debtor and Navistar Leasing Company to the contrary, Debtor is prohibited from further retention, possession, or use of said 22 trailers.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

12